**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| SCHAEFFER MFG. CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 4:24CV1656 JAR |
| | ) |
| JAMES D. JOHNSON, | ) |
| | ) |
| Johnson. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss [ECF No. 8]. Plaintiff filed its response in opposition, to which Defendant filed a reply. The Motion is fully briefed and ready for disposition. For the reasons set forth below, Defendant's Motion will be denied.

**Background and Facts**

On November 1, 2024, Plaintiff Schaeffer Mfg. Co. ("Schaeffer") filed this action in the Circuit Court of the City of St. Louis, Missouri against Defendant James D. Johnson, alleging breach of contract and breach of fiduciary duties (including duty of loyalty), or alternatively, unjust enrichment. Johnson subsequently removed this action to federal court pursuant to diversity jurisdiction under 28 U.S.C. § 1332. Johnson moves to dismiss Schaeffer's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Schaeffer's complaint [ECF No. 5], in pertinent part, alleges[1] the following:

Schaeffer is a manufacturing company based in St. Louis, Missouri, specializing in the production and sale of industrial lubricants, industrial greases, industrial oils, chain lubes, and

_____

[1] Unless otherwise noted, all facts in this section are alleged in Schaeffer's complaint and accepted as true for purposes of this motion only. *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017).

degreasers. In 1982, Schaeffer hired Johnson, a citizen of Wisconsin, as an employee sales

representative. In 1989, Johnson and Schaeffer entered into an Employee Sales Agreement (the

"Johnson Agreement"). Schaeffer promoted Johnson to a Division Manager position in

approximately 1992, a position he held until late 2021.

In August 2021, announced a plan to eliminate all of the Division Manager positions

within the company. Schaffer then offered the Division Managers, including Johnson, the option

to remain with Schaeffer as sales representatives. The terms of this transition were outlined in a

Memorandum of Understanding ("MOU"), which was provided to each Division Manager.

Johnson did not execute the MOU, but continued employment with Schaeffer and accepted all of

the benefits of the MOU.

In December 2021, Johnson transitioned back into a sales representative position. The

MOU provided that Johnson would continue earning commissions on both his personal sales and

on sales made by sales representatives in his former division (the "Override Commissions"), over

a four-year period. During this four-year period, the Override Commissions were to be paid at

100% starting in 2022, and declining by 25% increments each year until the Override

Commissions were entirely eliminated in 2025. Johnson has received and accepted all

corresponding Override Commissions in accordance with the MOU to date.

In December 2022, Johnson informed Schaeffer that he was terminating his employment

relationship with Schaeffer, and that effective January 1, 2023, he would continue to sell

Schaeffer product through an entity he had set up for that purpose, Payback Sales, LLC.

Schaeffer agreed to allow Johnson to transition to an independent contractor role selling

Schaeffer product through his entity while continuing to receive Override Commissions under

the terms of the MOU.

Over a year later, Schaeffer began learning facts indicating that, while still employed at Schaeffer, Johnson had established a competing business, Extreme Crane Lube, and had been selling, and was continuing to sell, industrial lubricants in direct competition with Schaeffer's product offerings in violation of Section 15 of the Johnson Agreement, which provides in part:

> [f]or a period of two years following termination of your employment with the Company for any reason, you will not directly or indirectly engage in or associate yourself with a business that is in competition with the Company, or contribute your knowledge to any work or activity that involves a product, service or development that is competitive with or similar to a product, service or development of the Company . . . .

ECF No. 5-2 at 3.

Furthermore, Shaeffer alleges that Johnson's conduct in setting up Extreme Crane Lube and Selling "Extreme"-branded products while still an employee of Schaeffer violated Section 14(b) of the Johnson Agreement, which provides that "[a]s an employee, you must represent the Company exclusively and you cannot represent other businesses." *Id.*

Schaeffer alleges that after Johnson transitioned from an employee to an independent contractor role at Schaeffer on January 1, 2023, he continued to engage in competition with Schaeffer through his Extreme Crane Lube business, as well as by selling other "Extreme"-branded lubricants, greases and cleaners that directly compete with Schaeffer products. On information and belief, Johnson sold "Extreme"-branded product to Schaeffer customers while an employee, and he continues to do so.

Moreover, on information and belief, Johnson solicited other Schaeffer sales representatives (including Luke Johnson) to sell these "Extreme"-branded competing products in violation of their own contractual obligations to Schaeffer and to get them to eventually end their

3

association with Schaeffer. Soliciting Schaeffer sales representatives also violated Section 15 of the Johnson Agreement, which stipulated that for the same two-year period following termination of his employment with Schaeffer, Johnson would "not solicit or induce sales representatives of the Company to terminate their association with the Company." *Id.*

As Johnson's employee status terminated on December 31, 2022, Johnson remained barred from competing with Schaeffer and soliciting its sales representatives until January 1, 2025. Thus, Johnson's actions until that date constituted violations under the terms of the Johnson Agreement.

Schaeffer's complaint alleges the following three counts: Breach of Contract (Count I); Breach of Fiduciary Duties Including Duty of Loyalty (Count II); and, alternatively, Unjust Enrichment (Count III). Johnson moves to dismiss Schaeffer's complaint in its entirety for failure to state any claims upon which relief can be granted.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). This court "accept[s] as true the complaint's factual allegations and grant[s] all reasonable inferences to the non-moving party." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) (internal citation omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of entitlement to relief "requires more

4

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

### Discussion

#### Count I: Breach of Contract

To state a claim for breach of contract under Missouri law, a party must allege "(1) the making and existence of a valid and enforceable contract, (2) the right of the plaintiff and the obligation of the defendant thereunder, (3) a violation thereof by the defendant, and (4) damages resulting to the plaintiff from the breach." *Compass Bank v. Eager Rd. Assocs., LLC*, 922 F.Supp.2d 818, 823 (E.D. Mo. 2013) (citing *Gilomen v. Sw. Mo. Truck Ctr., Inc*., 737 S.W.2d 499, 500–01 (Mo. App. S.D. 1987)).

#### 1.  Enforceability of the Non-Compete And Non-Solicitation Clauses

Johnson indicates that because the terms of the 2021 MOU "replaces and supersedes any and all prior understandings and agreements concerning override commissions," the non-compete and non-solicitation clauses from the 1989 Johnson Agreement have been supplanted and are unenforceable. ECF No. 5-1 at 2. In response, Schaeffer maintains that the Johnson Agreement's non-compete and non-solicitation clauses are still in effect, as the MOU only replaced any prior agreements concerning *override commissions*, which are not referenced in the Johnson Agreement. *See Berry v. Crouse*, 376 S.W.2d 107, 112 (Mo. 1964) (holding that "when

5

two writings are inconsistent, the contract last executed, if valid, will supersede the first to the extent that the two are inconsistent. [ . . .] The subsequent agreement, even though it is in writing, does not discharge the previous oral (or written) agreement if it is not agreed that it shall and it is not inconsistent therewith.").

Moreover, Johnson contends that the non-compete clause from the Johnson Agreement is unreasonable due to the lack of particularized facts as to geographical and temporal scope. Schaeffer responds that Johnson's argument is improper on a motion to dismiss. *See Christian Disposal, L.L.C. v. WCA Waste Corp.*, No. 4:13-CV-2255 RWS, 2014 WL 651414, at *5 (E.D. Mo. Feb. 19, 2014) (holding dismissal of claim for breach of non-solicitation provision was "premature for [the Court] to consider [ . . .] at the dismiss[al] stage of litigation. Determining the reasonableness of the non-solicitation clause is a fact-specific inquiry, and parties have not yet had the opportunity to conduct discovery or sufficiently brief the reasonableness issue."). Beyond the propriety of the argument, Schaeffer also points out that Missouri courts have enforced similar non-compete provisions. *See, e.g., JumboSack Corp. v. Buyck*, 407 S.W.3d 51, 53 (Mo. App. E.D. 2013) (finding non-compete provision against former salesperson with three-year limitation period for "any customer(s) of Employer for whom Employee had sales responsibility during the period that Employee was employed by Employer" was enforceable). Shaeffer argues that in the event the Court finds some part of the non-complete clause to be unreasonable, the Court may also limit its language to make it enforceable. *See Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 844-45 (Mo. banc 2012) (holding that when "the provisions of a non-compete clause impose a restraint that is unreasonably broad, [ . . .] courts still can give effect to its purpose by refusing to give effect to the unreasonable terms or modifying the terms of the contract to be reasonable.").

Schaeffer alleges that the Johnson Agreement was agreed to in consideration for

Johnson's "continued employment" and to "outline the terms of Johnson's employment" at the

time. ECF No. 5 at ¶ 9. Under Missouri law, however, mere continued employment is

insufficient consideration, so Johnson argues that Schaeffer's breach of contract claim is fatal on

this basis. Schaeffer responds that it has pled facts supporting the existence of sufficient

consideration under Missouri law. "Missouri courts have recognized that continued at-will

employment constitutes consideration for a non-compete agreement where the employer allows

the employee by virtue of the employment[,] to have continued access to [its] protectable assets

and relationships." *JumboSack Corp.*, 407 S.W.3d at 55-56 (internal citations and quotation

marks omitted).

At this early stage of the proceeding the Court is unconvinced by Johnson's contention

that the non-compete and non-solicitation clauses from the Johnson Agreement have been

supplanted by the MOU. As Schaeffer pointed out, the MOU only replaced any prior agreements

concerning *override commissions*, which are not referenced in the Johnson Agreement. Nothing

in the MOU purported to discharge the Johnson Agreement's non-compete and non-solicitation

clauses. As the Johnson Agreement and the MOU are not inconsistent, the non-compete and non-

solicitation clauses have not been superseded. *See Berry*, 376 S.W.2d at 112.

Johnson's argument that the non-compete clause is unreasonable due to the lack of

particularized facts as to geographical and temporal scope is premature on a motion to dismiss.

*See, e.g., Christian Disposal, L.L.C.*, 2014 WL 651414 at *5 ("Determining the reasonableness

of the clause will depend on the . . . time, scope, and geographic limitations of the clause

itself."). Schaeffer's further assertion that the non-compete clause is enforceable need not be

decided at this stage of the proceedings, as the enforceability of the clause is a fact-specific

inquiry that will necessitate discovery and additional briefing.

Moreover, Johnson's assertion that continued employment is insufficient consideration
goes too far. While mere continued employment *may* be insufficient, Missouri courts have found
that when combined with continued access to protectable assets and relationships, continued
employment is valid consideration. *JumboSack Corp.*, 407 S.W.3d at 55-56 (citing *Morrow v.
Hallmark Cards, Inc.*, 273 S.W.3d 15, 29 (Mo. App. W.D. 2008); *Nail Boutique, Inc. v. Church*,
758 S.W.2d 206, 210 (Mo. App. S.D. 1988); *Computer Sales Int'l, Inc. v. Collins*, 723 S.W.2d
450, 452 (Mo. App. E.D. 1986)). Schaeffer's complaint referenced Johnson's access to
confidential and trade secret information, including confidential sales strategies, sales trainings,
customer lists and contact information as well as Schaeffer's NetSuite business management
system, which included confidential vendor and customer pricing information, product
formulations, and other highly sensitive and proprietary business information. (ECF No. 5 at ¶¶
13-14). While the Court is not in a position at this point to find that such resources constitute
"continued access to protectable assets and relationships," Plaintiff has adequately pled facts to
survive this Motion.

### 2. Sufficiency of the Pleading

Johnson argues that even if the Court finds that the non-compete and non-solicitation
clauses are enforceable, Schaeffer's pleading is still deficient. Because Schaeffer did not explain
how Johnson's own product competed with Schaeffer's product or show that Johnson solicited
"any other" of Schaeffer's sales representatives, Johnson asserts that the allegations are no more
than "threadbare recitals" of the cause of action elements and "are not entitled to the assumption
of truth." ECF No. 8 at 10. Johnson states that Schaeffer makes a conclusory allegation of breach
of the Johnson Agreement, as Schaeffer did not specify the identity and location of Johnson's

8

customers or where Johnson solicited them. Johnson also contends that Schaeffer's assertion of

breach is overbroad in the absence of any particularized facts as to geographical and temporal

scope. In response, Schaeffer contends that it is not required to provide detailed allegations as to

every single fact in its initial pleading. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific

facts are not necessary; the statement need only give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests.") (internal citations and quotation marks omitted).

Schaeffer further points out that it has pled each of the elements of breach of contract with

supporting facts and has included the entire Johnson Agreement as an exhibit to its complaint.

Schaeffer also states that which product was competitive, the geographic scope of Johnson's

competition, and who Johnson solicited are specific fact questions that are not relevant at this

stage of the proceedings. *See Neeley v. Wolters Kluwer Health, Inc.*, No. 4:11-CV-325 JAR,

2013 WL 3929059, at *14 (E.D. Mo. July 29, 2013) (Presentment of an "issue of fact [ . . .] is

not proper at the motion to dismiss stage.").

Additionally, Johnson states that it is implausible that Johnson used any trade secrets as

to Schaeffer's lubricant products in formulating his own Extreme Crane Lube-branded product.

Johnson argues that Schaeffer's omission of any claim to any ownership rights as to Johnson's

independent inventions and intellectual property in the Johnson Agreement cannot be construed

against him. Schaeffer responds that what trade secrets were involved is a specific fact question

that is irrelevant at this stage of litigation. *See id*.

Johnson finally asserts that Schaeffer has not plausibly alleged damages. Johnson states

that despite Schaeffer claiming lost market share and lost profits due to Johnson selling

competitive product, Schaeffer has not alleged that Johnson misused any proprietary customer

lists or that he directly solicited Schaeffer's existing customers, and moreover merely losing

9

market share or profits is not actionable. Johnson further states that Schaeffer has presented no specific facts or evidence relating to the alleged damages exceeding $1 million. Schaeffer responds that the calculation of damages is a specific fact question that is irrelevant at this stage of litigation. *See id.*

The Court finds that Schaeffer has adequately pled breach of contract. Schaeffer provided sufficient facts to put Johnson on notice of the claim, pleading the existence of a valid contract and its obligations, Johnson's violation, and damages in accordance with Federal Rule of Civil Procedure 8(a)(2). Specifically, Schaeffer has alleged that the Johnson Agreement is a valid and binding contract (ECF No. 5 at ¶ 41), that the Agreement obligated Johnson to avoid competing with Schaeffer's business or soliciting Schaeffer's sale representatives to terminate their association with Schaeffer (*Id.* at ¶¶ 31, 38), that Johnson violated the Johnson Agreement by establishing a competing business and by soliciting Schaeffer's sale representatives to terminate their association with Schaeffer (*Id.* at ¶¶ 42-45), and that Schaeffer suffered damages exceeding $1 million as a result of Johnson's violation (*Id.* at ¶ 50).

In his Motion, Johnson suggests that the Court take judicial notice of Schaeffer's website in asserting that the relevant information on Schaeffer's product is a not a trade secret. In the Court's view, however, the supposed implausibility of Johnson's use of trade secrets or the lack any claim by Schaeffer to Johnson's inventions or intellectual property is inessential to the breach of contract elements. Schaeffer is not required to plead that Johnson used trade secrets or that it claims Johnson's inventions or intellectual property. Rather, the relevant element is an allegation that Johnson violated the contract, which Schaeffer has done by pleading that Johnson violated the Agreement by selling a competing product and soliciting Schaeffer's sales representatives to terminate their association with Schaeffer.

Finally, despite Johnson's contentions, the calculation of damages is a fact-specific question that the Court will not consider at the motion to dismiss phase. *United States v. Arthur*, No. 4:10CV01561 AGF, 2011 WL 4369425, at *2 (E.D. Mo. Sept. 19, 2011) ("[T]he calculation of damages is ultimately a fact specific determination and not one which is properly resolved by way of a motion to dismiss."). The allegation of damages in Schaeffer's complaint is adequate.

Schaeffer has satisfied the elements for a cause of action for breach of contract under Missouri law to survive this stage of the proceedings. *See, e.g., BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 689 (8th Cir. 2003) ("The allegations that [the plaintiff] had a binding agreement with [the defendant], that [the defendant] breached the agreement, and that [the plaintiff] suffered injury as a result of the breach, are sufficient to satisfy the requirements of Rule 8(a)."). Johnson's Motion to Dismiss Count I of Schaeffer's complaint will be denied.

## Count II: Breach of Fiduciary Duties (Including Duty of Loyalty)

Under Missouri law, "every employee owes his or her employer a duty of loyalty." *Scanwell Freight Express STL, Inc. v. Chan*, 162 S.W.3d 477, 479 (Mo. banc 2005) (citing *Nat'l Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 41 (Mo. banc 1966). Pursuant to this duty, "[an employee] must not, while employed, act contrary to the employer's interests." *Trieman*, 409 S.W.2d at 41. It "necessarily follows that a breach arises when the employee goes beyond the mere planning and preparation and actually engages in direct competition, which, by definition, is to gain advantage over a competitor." *Chan*, 162 S.W.3d at 479.

Johnson argues that Schaeffer cannot meet its burden of proving that Johnson is a fiduciary, as the employee or agent must occupy a position "of the highest trust and confidence" under Missouri law. *Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.*, No. 1:11-CV-19 CEJ, 2012 WL 3027848, at *4 (E.D. Mo. July 24, 2012) (quoting *Western Blue*

11

*Print Co., LLC v. Roberts*, 367 S.W.3d 7, 15 (Mo. banc 2012). Johnson states that Schaeffer argues in a conclusory fashion that Johnson was a fiduciary because he was a manager with access to confidential information and trade secrets. However, while Missouri law holds that "officers and directors of public and closely held corporations are fiduciaries," employees such as, "a sales manager, a purchasing agent, and a branch office manager" are not. *Id.* (quoting *Western Blue Print Co. LLC*, 367 S.W.3d at 15). Johnson also posits that whether Johnson should be classified as an employee under the Johnson Agreement or as an independent contractor under the MOU is still in question.

In response, Schaeffer asserts that Missouri law still recognizes that the duty of loyalty is equally applicable to non-executive employees, including sales representatives. *See Synergetics, Inc. v. Hurst*, 477 F.3d 949, 959 (8th Cir. 2007) (finding that two sales representatives breached their duty of loyalty to their employer by designing competing products and soliciting the employer's customers). Further, because Schaeffer pled facts that Johnson entered into the Johnson Agreement which classified Johnson as an employee, Schaeffer argues that Johnson's attempt to dispute that designation is inappropriate at the motion to dismiss stage.

The Court finds that Schaeffer has adequately pled a breach of the duty of loyalty. With all due respect to the cases cited by Johnson for the proposition that a sales manager is not a fiduciary, the Court will follow the Eighth Circuit's *Synergetics* decision, which applied Missouri law and confirmed that sales representatives can breach a fiduciary duty of loyalty owed to their employers. 477 F.3d at 959. Moreover, the question of Johnson's status as an employee or independent contractor is not proper at this early stage in the proceedings. *See, e.g., Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010) (where the plaintiff's complaint raised plausible inference of both employee and independent contractor status, the correct classification

12

was held "not an issue to be determined by a motion to dismiss.").

Schaeffer has pled sufficient facts to support its claim that Johnson acted contrary to its interests and engaged in direct competition. Specifically, Schaeffer's complaint alleges that Johnson solicited and accepted business from Schaeffer's customers on behalf of his competing business, used and/or disclosed Schaeffer's confidential information in carrying out these solicitation activities, and solicited Schaeffer's sales representatives to leave their employment with Schaeffer and join his own business which sold product in direct competition with Schaeffer and which usurped Schaeffer's sales opportunities. (ECF No. 5 at ¶ 57). Schaeffer has satisfied the elements for a cause of action for breach of the fiduciary duty of loyalty under Missouri law. Johnson's Motion to Dismiss Count II of Schaeffer's complaint will be denied.

### Count III: Unjust Enrichment

Pursuant to Missouri law, unjust enrichment claims have three elements: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 199 (Mo. banc 2014) (internal citation omitted).

Schaeffer is pleading unjust enrichment in the alternative. Johnson, however, argues that Schaeffer's unjust enrichment theory is unavailable because it is entirely inconsistent with the breach of contract claim. Moreover, Johnson asserts that Schaeffer has not alleged how Johnson was unjustly enriched since it does not deny that he earned his commissions, benefits and other compensation as a sales representative for Schaeffer.

Schaeffer maintains that it can plead both unjust enrichment and breach of contract. "While [a party] may not recover under both breach of contract and quantum meruit/unjust

enrichment, he is permitted to plead both claims." *Franke v. Greene*, No. 4:11CV1860 JCH, 2012 WL 3156577, at *5 (E.D. Mo. Aug. 2, 2012). "In reliance upon the Rule 8, federal courts in Missouri have consistently denied motions to dismiss quasi-contract claims even where the pleading also alleges the existence of an express contract." *Leisman v. Archway Med., Inc.*, 53 F.Supp.3d 1144, 1148 (E.D. Mo. 2014) (internal citation omitted).

In addition, Schaeffer asserts that it does not need to specifically claim that the benefits received by Johnson were not earned. Rather, under Missouri law, an employee may be financially enriched by competing with their employer, and it is unjust for employees to retain benefits gained as a result of breaching their duties to their employer. *CIBC Bank USA v. Williams*, 669 S.W.3d 298, 311-12 (Mo. App. E.D. 2023), reh'g denied (June 12, 2023) (finding that employer CIBC sufficiently pled unjust enrichment where it alleged that two employees "were financially enriched by competing with CIBC while still employed with CIBC. In other words, CIBC pleaded [former employees] received benefits at CIBC's expense.").

The Court finds that Schaeffer is permitted to plead unjust enrichment in the alternative. *See, e.g., Owen v. Gen. Motors Corp.*, No. 06-4067-CV-C-NKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006) ("The fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in her complaint."). Federal Rules of Civil Procedure 8(d)(2) and 8(d)(3) expressly allow pleading in the alternative, regardless of consistency.

Furthermore, whether Johnson "earned" the benefits conferred upon him by Shaeffer is irrelevant at this stage. Schaeffer has pled sufficient facts to support its claim that it conferred benefits upon Johnson, that Johnson appreciated the benefits, and that Johnson accepted and retained the benefits under unjust circumstances. Specifically, Schaeffer pled that Johnson was

enriched through improper receipt of Override Commissions, benefits, and other compensation while he was selling competing product and soliciting Schaeffer's sales representatives. (ECF No. 5 at ¶ 63). Schaeffer also alleged that if it had known of Johnson's competitive actions, Johnson would not have continued to receive Override Commissions, benefits, and other compensation, and so he was unjustly enriched at Schaeffer's expense. (*Id.* at ¶ 64). Schaeffer has satisfied the elements for a cause of action in the alternative for unjust enrichment under Missouri law. Johnson's Motion to Dismiss Count III of Schaeffer's complaint will be denied.

## Conclusion

For the reasons set forth above, the Court will deny Defendant's Motion to Dismiss. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [ECF No. 8] is **DENIED**.

Dated this 16th day of June, 2025.

*John A. Ross*

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**